UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff(s)<br><br>   v.<br><br>CARLOS GONZALES-LOPEZ<br><br>   Defendant | Case No.  CR-18-00213<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>Docket No. 24 |

## I. INTRODUCTION

In December 2017, the federal government charged Mr. Carlos Gonzalez-Lopez in a one-count information with unlawful re-entry into the United States after deportation, without permission of the Attorney General or the Secretary of Homeland Security, in violation of 8 U.S.C. § 1326. Before the court is Defendant's Motion to Dismiss the information. Defendant collaterally attacks his 2010 removal order, a predicate element of a conviction under § 1326. Defendant claims the 2010 removal order was "fundamentally unfair" because the order allegedly (1) violated his due process rights; and (2) caused him prejudice. For the reasons below, Defendant's Motion to Dismiss is granted.

## II. FACTUAL BACKGROUND

Defendant, a citizen of Mexico, has lived in the United States for most of his life. *See* Gonzalez-Lopez Decl. (Dkt. No. 24-2) ¶¶ 1-2; Mot. to Dismiss, Ex. A (Dkt. No. 24-1) at 3. He

first came to the United States in 1993 when he was four-years-old with his mother and sister. Gonzalez-Lopez Decl. ¶ 1. Defendant grew up in the Bay Area. *Id.* ¶ 2. He attended school in San Jose and Milpitas until the tenth grade. *Id.* As a juvenile, Defendant developed an "extensive" criminal history. Opp'n (Dkt. No. 25) at 6; *see also* Encinas Decl. (Dkt. No. 26) ¶ 16. He was arrested for felony first degree burglary, felony malicious setting fire to property, misdemeanor assaults, misdemeanor having sex with a minor with a three-year age difference, and theft. Encinas Decl. ¶ 16. In August 2004, Defendant was sentenced to 80 months of probation for two findings of felony first degree burglary and felony malicious setting fire to property. *See id.*, Exs. E, H.

On May 18, 2007, as a seventeen-year-old, Defendant attempted to enter the United States at the San Ysidro Port of Entry by hiding himself in an auxiliary gas tank in a pick-up truck. *See* Encinas Decl. ¶ 7. Mr. Juan Carlos Ascension Reyes was driving the truck. *See id.* Defendant did not have valid immigration documents. *Id.* But U.S. Customs and Border Protection ("CBP") paroled Defendant into the U.S. from May 18, 2007 through June 17, 2007 because he was a material witness to Mr. Reyes' alleged crime of alien smuggling. *Id.*

On June 5, 2007, U.S. Magistrate Judge Anthony J. Battaglia of the Southern District of California ordered Defendant placed into the custody of the Alameda County Juvenile Court based on a warrant for Defendant's arrest for violating his probation. *Id.* ¶ 8. CBP paroled Defendant into the custody of the Alameda County Juvenile Hall. The next day, CBP issued an Immigration Detainer for Defendant. *Id.* The Immigration Detainer asked the court or law enforcement to notify CBP before releasing Defendant from state custody. *Id.* CBP did not receive notification when Defendant was later released in July 2007. *Id.* At the time of Defendant's release, his parole had expired and he was unlawfully present in the United States.

While residing in the United States on unlawful status, Defendant married Ms. Amy Ramos, a U.S. citizen. Gonzalez-Lopez Decl. ¶ 3. He worked different jobs performing landscaping, foundation, roofing and electrical work. *Id.* ¶ 4. During this time, the Defendant was convicted of various crimes in the Santa Clara County Superior Court. In November 2009, Defendant was convicted of a misdemeanor for use/being under the influence of a controlled

1  substance and felony grand theft.  Encinas Decl. ¶ 9.

2  After Defendant served jail time for these convictions, he was placed into ICE custody in
3  May 2010.  *Id.* ¶ 11.  ICE transported Defendant to CBP Deferred Inspection "for a determination
4  of inadmissibility" to the United States.  *Id.*  CBP Officer ("CBPO") Alice Sim Sam interviewed
5  Defendant for an expedited removal proceeding.  Supervising CBP Officer ("SCBPO") John
6  Encinas served as a Spanish-speaking interpreter for Defendant during the interview.  *Id.* ¶ 12.  Per
7  regulations governing expediting removal proceedings, 8 C.F.R. § 253.3(b)(2)(i), examining
8  immigration officers must complete three forms: Forms I-867A, I-867B, and I-860.  *See* 8 C.F.R.
9  § 253.3(b)(2)(i).

10  Form I-867A, the Record of Sworn Statement in Proceedings Under Section 235(b)(1) of
11  the Act, must include a transcript of the interview.  *See id.*  Form I-867B, the Jurat for Record of
12  Sworn Statement in Proceedings Under Section 235(b)(1) of the Act, must document an alien's
13  answers concerning "identity, alienage, and admissibility."  *See id.*  These two forms collectively
14  are called Form I-867A/B.  The examining officer must "have the alien read (or have read to him
15  or her) the statement [in Form I-867A/B], and the alien shall sign and initial each page of the
16  statement and correction [in Form I-867A/B]."  Form I-860, Notice and Order of Expedited
17  Removal, notifies the alien of any immigration charges against him or her.  After supervisors
18  approve an examining immigration officer's determination of inadmissibility, the examining
19  officer must serve the alien with the Form I-860 and obtain the alien's signature acknowledging
20  receipt.

21  Defendant's Form I-867A/B has discrepancies.  *See* Mot. to Dismiss, Ex. A.  Defendant's
22  Form I-867A/B is numbered incorrectly.  *See id.*  Form I-867A/B consists of seven pages in total,
23  but the first page inaccurately states, "Page 1 of 1," followed by pages 2, 3, 4, 5, 6 of 6.  *See id.* at
24  3.  And the last paragraph of page 6 omits any reference to a page number.  *See id.* at 7.  The last
25  paragraph of page 6 states:

26  > I have read (or had read to me) the foregoing statement consisting of
27  > ____ pages (including this page).  I state that the answers made
28  > therein by me, are true and correct to the best of my knowledge and
> belief, and that this statement is a full, true, and correct record of my
> interrogation on the date indicated by the above named officer of the

> Immigration and Naturalization Service. I have initialed each page of the statement (and any corrections) noted on pages 1 through ____.

*Id.* Defendant signed his name below this paragraph and initialed the bottom of each page of Form I-867A. *See id.* at 2-7. In response to this page-numbering issue, SCBPO Encinas states, "[I]t is clear that CBPO Simsam and I reviewed each question and answer with the Defendant as demonstrated by his initials at the bottom of every page, which we asked individuals to make as review of each page is completed." Encinas Decl. ¶ 13.

Defendant's Form I-867B contains Defendant's handwritten initials next to four questions. The questions asked why Defendant left his home country; whether he had any fear or concern about returning to his home country; whether he would be harmed if he returned to his home country; and whether he had anything else to add. *See* Mot. to Dismiss, Ex. A at 8. The Form I-867B, however, is missing Defendant's handwritten signature. The Form I-867B instead contains Defendant's typed name, "CARLOS R. GONZALEZ LOPEZ," below this paragraph:

> I have read (or have read to me) this statement, consisting of __1__ pages (including this page). I state that my answers are true and correct to the best of my knowledge and that this statement is a full, true and correct record of my interrogation on the date indicated by the above named officer of the Immigration and Naturalization Service. I have initialed each page of this statement (and the corrections noted on page(s).

*Id.* During the interview, CBPO Sim Sam determined Defendant was inadmissible to the U.S. on two grounds. *Id.* at 6. First, Defendant lacked the appropriate documentation to lawfully reside in the U.S. *Id.* Second, Defendant unlawfully remained in the U.S. after his parole as a material witness expired in July of 2007. *Id.* at 6-7. As a result, the government barred Defendant from re-entering the U.S. for five and ten years respectively from the date of his removal. *Id.*

SCBPO Encinas and Chief Supervisory Officer John Frederick Ho approved the expedited removal order. Encinas Decl. ¶ 14. SCBPO Encinas concluded that providing Defendant with the opportunity to voluntarily withdraw his application for admission was not plausible based on his "review of the Defendant's criminal and immigration history in conjunction with his documents." *Id.* ¶ 16. SCBPO Encinas reasoned: "At the time of the expedited removal, he did not possess any documentation to establish his identity, he had an extensive juvenile criminal history that occurred prior to his May 2007 attempted illegal entry into the United States . . . and he failed to depart the

4

1    United States when his parole expired." *Id.*

2    After receiving approval of her inadmissibility determination, CBPO Sim Sam personally
3    served Defendant with the Form I-867A/B and Form I-860. *Id.* ¶ 14. Form I-860 stated that
4    Defendant was "found to be inadmissible as charged and ordered removed from the United
5    States." Mot. to Dismiss, Ex. A at 10-11. Defendant acknowledged receipt of Form I-860 by
6    printing the date and his name after the words, "Received By," on the form. *Id.*; Encinas Decl. ¶
7    15.

8    After CBPO Sim Sam served Defendant with the expedited removal documents, Defendant
9    was placed back into ICE custody and transported to the San Ysidro Point of Entry for removal.
10   Encinas Decl. ¶ 15. An Immigration Enforcement Agent confirmed Defendant's removal from the
11   United States by completing the Verification of Removal. *Id.*

12   Following Defendant's 2010 removal, he was later arrested and deported three more times
13   in May 2011, June 2011, and April 2012. Norris Aff. (Dkt. No. 1) ¶ 3. On March 29, 2012,
14   Defendant was convicted in U.S. District Court in the Northern District of California for unlawful
15   re-entry following deportation in violation of 8 U.S.C. § 1326. *Id.* ¶7. On April 20, 2012,
16   Defendant was deported for the fourth time. *Id*. ¶ 3.

17   In May 2017, law enforcement found Defendant in Santa Clara County. Compl. (Dkt. No.
18   1) at 1. In December 2017, the federal government charged Defendant in a one-count information
19   with unlawful re-entry into the United States after deportation, without permission of the Attorney
20   General or the Secretary of Homeland Security, in violation of 8 U.S.C. § 1326. *Id.*

21   **II.    DISCUSSION**

22   **A. Legal Standards**

23   A defendant may, prior to trial, move to dismiss an indictment on the ground that the
24   indictment "fails to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). When considering a Rule
25   12(b)(3)(B)(v) motion to dismiss, a court accepts the allegations in the indictment as true and
26   analyzes whether a cognizable offense has been charged. *U.S. v. Boren*, 278 F.3d 911, 914 (9th
27   Cir. 2002). "Courts may grant a pretrial motion to dismiss an indictment when it seeks to resolve
28   questions of law, not fact." *U.S. v. Salgado-Martinez*, No. 19-cr-389 CRB, 2020 WL 4818703, at

*5 (N.D. Cal. Aug. 19, 2020) (citing *U.S. v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987)).

Here, Defendant is charged with a violation of 8 U.S.C. § 1326(a), which provides as follows:

> Subject to subsection (b), any alien who—
>
> **(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> **(2)** enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a). A defendant facing a charge under 8 U.S.C. § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction. *U.S. v. Salgado-Martinez*, 2020 WL 4818703, at *5. A defendant can successfully "challenge" a removal order by demonstrating that "(1) the alien exhausted administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings . . . deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

Here, the first two prongs are satisfied because expedited removal proceedings offer aliens neither administrative nor judicial review. To satisfy the third prong, Defendant must show that the 2010 expedited removal proceeding was "fundamentally unfair." 8 U.S.C. § 1326(d). More specifically, Defendant has the burden of establishing both that the expedited removal proceedings violated his due process rights and that the violation caused him prejudice. *U.S. v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

**B. Defendant Had Due Process Rights During the Expedited Removal Proceeding**

The government argues that Defendant was not entitled to Fifth Amendment protections during his expedited removal proceedings "because he had not made an entry to the United States"

6

1    when the government stopped him at the San Ysidro Point of Entry. Opp'n at 6. The government
2    cites Supreme Court precedent that draws a "distinction between an alien who has effected an
3    entry into the United States and one who has never entered." *Id.* (citing *Zadvydas v. Davis*, 533
4    U.S. 678, 693 (2001)). Persons within U.S. borders have a right to due process under the Fifth
5    Amendment, while persons outside the country's borders do not. Opp'n at 7 (citing *United States*
6    *v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990)).

7          The government argues that because Defendant was initially apprehended *at the border* in
8    2007 and then paroled into the U.S., he is theoretically still outside U.S. borders and therefore not
9    entitled to the protections afforded by the Due Process Clause. *See Kaplan v. Tod*, 267 U.S. 228,
10   230 (1925) (holding that immigrant who was paroled into the U.S. was "still in theory of law at
11   the boundary line and had gained no foothold in the United States."); *see also Angov v. Lynch,* 788
12   F.3d 893, 898 (9th Cir. 2015) *(*quoting *Kwai Fun Wong v. United States,* 373 F.3d 952, 971 (9th
13   Cir. 2004)). In *Kwai Fun Wong*, the Ninth Circuit found that an immigrant at the San Ysidro Port
14   of Entry who did not have valid entry documents "had not 'entered the United States, even if [he]
15   was in fact physically present,' and therefore [has] no procedural due process rights in the
16   admission process." Opp'n at 7 (citing *Kwai Fun Wong*, 373 F.3d at 971).

17         Defendant contends that despite having been apprehended at a port of entry, he became
18   unlawfully present in the United States when his parole expired in 2007 and thereby entitled to the
19   full panoply of protections afforded by the Due Process Clause. Def.'s Reply (Dkt. No. 34) at 4.
20   Defendant's characterization of his status after his parole expired is consistent with CPB Agent
21   Sim Sam's statements in the I-867A. *See* Exh. A (BATES 000182) ("After your authorized parole
22   expired on July 5, 2007, you remained in the United States in UNLAWFUL STATUS until your
23   arrest by Immigration and Customs Enforcement on October 13, 2009. As a result of your
24   unlawful presence, you are inadmissible to the United States under Section 212(a)(9)(B)(i)(II) of
25   the Immigration and Nationality Act, as one who accrued UNLAWFUL PRESENCE FOR ONE
26   YEAR OR MORE in the United States."); *see also* 8 U.S.C. § 1182(a)(9)(B)(ii) (alien "deemed to
27   be unlawfully present in United States if the alien is present in the United States after the
28   expiration of the period of stay authorized by the Attorney General or is present in the United

States without being admitted or paroled").

Nevertheless, the government's position is supported by the Supreme Court's recent decision in *In Dep't of Homeland Sec. v. Thuraissigiam*, --U.S. --, 140 S.Ct. 1959, 1964 (2020). In *Thuraissigiam*, the respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. *Id*. The Supreme Court observed that although "aliens who have established connections in this country have due process rights in deportation proceedings, . . . an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id*. The respondent in *Thuraissigiam*, therefore, "[had] no entitlement to procedural rights other than those afforded by statute." *Id*. Congress has codified certain procedural rights in the expedited removal regulations and immigration statutes. Thus, Defendant had a right to procedural due process that conformed with the applicable statutes and regulations. *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015) ("the regularity of Garcia's expedited removal proceeding is judged solely by the procedures set out in 8 U.S.C. § 1225(b) and 8 C.F.R. § 1235.3(b)."); *see also Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1219 (9th Cir. 2002) (as an alien in exclusion proceedings, "the [INA] statute provides the only process Pazcoguin is due, and he received that process.").

**C. CBP Failed to Follow the Procedures Governing Expedited Removals**

Defendant claims the CBP officers did not comply with the regulations governing expedited removal proceedings, 8 C.F.R. § 235.3(b)(2)(i). Mot. to Dismiss at 2. The regulations provide:

> In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accompanied by means of a sworn statement using Form I-867AB, Record of Sworn Statement in Proceedings Under Section 235(b)(1) of the Act. *The examining immigration officer shall read (or have read) to the alien all information contained on Form I-867A.* Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I-867B, *and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and correction.* The examining immigration officer shall advise the alien of the charges against him or her on Form

> I-860, Notice and Order of Expedited Removal, and *the alien shall be given an opportunity to respond to those charges in the sworn statement.* After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt.

8 C.F.R. § 253.3(b)(2)(i) (emphasis added). Defendant contends that three particular "errors in combination cumulatively result[ed] in a due-process violation." Mot. to Dismiss at 3. First, Defendant argues that the absence of his signature on the Form I-867B and the inaccurately numbered pages for the I-867A/B Forms establish that the immigration officers violated section 235.3(b)(2)(i). Second, Defendant contends that there is no indication that the immigration officers ever allowed him to review the Form I-860 or that the officers explained the Form I-860 to him. *Id.* at 3-4. Defendant acknowledges that the Form I-860 shows that Officer Sim Sam signed a certificate of service and that Defendant printed his name on the form. *Id.* at 4. But Defendant argues that "[t]he Form I-867A/B makes no reference to the Form I-860 and therefore further supports [Defendant's] contention that he did not receive adequate notice of the charges against him as required by the regulation." *Id.* Third, Defendant contends that the language in Form I-867A is vague, and thus did not provide Defendant with sufficient notice of the consequences of the proceedings. *Id.* Specifically, Defendant takes issue with the statement, "[i]f a decision is made to refuse your admission into the United States, you *may* be immediately removed from this country [sic], and if so, you *may* be barred from reentry for a period of 5 years or longer.'" *Id.* (Defendant's emphasis).

This case presents factual similarities to *U.S. v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014) where defendant demonstrated that his expedited removal was "fundamentally unfair." 771 F.3d at 1025.[1] In both cases, the forms were numbered incorrectly. Here, Defendant's Form I-867B noted "Page 1 of 1" when the proper numbering was "Page 7 of 7." In *Raya-Vaca,* the defendant signed the Form I-867B, acknowledging that he had read a "statement consisting of 1 pages."

---

[1] The Supreme Court in *Thuraissigiam* abrogated the holding in *Raya-Vaca* to the extent it held that the Due Process Clause applies to an alien who succeeded in making it 25 yards into the United States before being apprehended. *Thuraissigiam*, 140 S.Ct. at 1982. Left unanswered after *Thuraissigiam* is whether violations of statutorily defined due process rights (as opposed to constitutionally defined due process rights) may result in a "fundamentally unfair" removal order. This Court concludes that they may; otherwise relief under § 1326(d) would be rendered illusory.

9

1  (quotations omitted). But his Form I-867A/B consisted of 4 total pages. *Id.* The Forms in this
2  case are even more suspect than in *Raya-Vaca* because Defendant's Form I-867B is missing a
3  handwritten signature.

4      There are, however, notable differences between the present case and *Raya-Vaca*. As the
5  government points out, in *Raya-Vaca*, the defendant claimed that immigration officers neither
6  explained "the nature of the removal proceedings" nor the proceedings' consequences. 771 F.3d
7  at 1025. But here, Defendant's assertion is more equivocal. Defendant "does not recall" whether
8  immigration officers explained to him the nature of the expedited removal proceedings.
9  Gonzalez-Lopez Decl. ¶ 5. Defendant does not recall being told whether he could be formally
10 removed as a result of the proceedings. *Id*. Defendant also does not recall whether he was told he
11 could request permission to withdraw his application for admission. *Id*. ¶ 6. Defendant asserts,
12 however, that if he had been told he could request permission to withdraw his application, he
13 would have done so. *Id*.

14     Further, in *Raya-Vaca*, the government did not argue that "the immigration officer did
15 indeed comply with the regulation at issue by advising Raya-Vaca of the charge against him and
16 reading to him, or allowing him to read, the sworn statement." *Raya-Vaca*, 771 F.3d at 1205. In
17 contrast, there is some evidence in this case that Defendant was advised that he had been found
18 inadmissible and would be removed the U.S. and barred from returning of a period of five years.
19 Opp'n at 8-9. Defendant initialed every page of the I-867A and signed the last page. *See* Dkt.
20 No. 24-1, Exh. B.

21     Nevertheless, the Court finds that the irregularities in Defendant's Forms make them too
22 unreliable to provide sufficient assurance that Defendant's statutory due process rights were
23 protected. *See United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 998-99 (D. Or. 2019); *see*
24 *also United States v. Ruiz*, No. 14-466 MMM, 2015 WL 13573882, at *2-3 (C.D. Cal. July 2,
25 2015) ("In this case, the government concedes there was a procedural error regarding the jurat
26 (Form I-867B), and assumes for purposes of this motion that the border patrol agent failed to read
27 the allegations regarding removability to Diaz. Furthermore, there is no evidence in the record to

verify that an immigration officer reviewed the Form I-860 with Defendant.[2] The Form I-860 only reflects that Defendant was served with the Form. Thus, for purposes of this motion, it admits there was a due process violation under *Raya-Vaca*."). The Court finds that the first prong of the "fundamentally unfair" analysis is satisfied.

### D. Defendant Has Established Prejudice

To show prejudice, Defendant must demonstrate that he had "plausible grounds for relief" from the removal order. *See Raya-Vaca*, 771 F.3d at 1206 (citation and quotations omitted). Defendant cannot succeed by merely showing a theoretical possibility of relief; however, he need not provide relief was probable. *Id*. at 1207. "Certainly, he need not show 'that he definitely would have received immigration relief.'" *Id.* (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011)). Instead, Defendant only needs to show "some evidentiary basis on which relief could have been granted." *Id.* at 1207 (citing *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049-50 (9th Cir. 2012)). One form of relief from an expedited removal proceeding is withdrawal of the application for admission. *See id*. at 1206 ("Even though Raya–Vaca did not formally apply for admission to the United States, he is considered to have been an applicant for admission and as such was eligible for "withdrawal of application for admission.").

Courts consider the factors stated in the Inspector's Field Manual for immigration officers when determining the plausibility of relief in the form of withdrawal of an application for admission. *See id.* at 1207. The non-exhaustible factors include: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id.* The Attorney General has the discretion to allow an alien whom CBP has determined is "inadmissible" to the U.S. to voluntarily withdraw his or her application for admission. *Id.* at 1200 (citing 8 U.S.C. § 1225(a)(4)). This relief enables the alien to "leave voluntarily and without

---

[2] Although there is no evidence to verify that an immigration officer reviewed the Form I-860 with Defendant, there is evidence indicating that Defendant was nevertheless aware of the substantive charges against him.

11

a removal order, and thus without facing formal immigration consequences." *Id.*

In *Raya-Vaca*, the Ninth Circuit held that withdrawal of defendant's application for admission was plausible relief based on "significant humanitarian considerations," despite defendant's "misdemeanor criminal history" and six prior illegal reentries. *See id.* at 1210. There, defendant's partner, children, mother, siblings, and extended family lived in the United States. *Id.* The Ninth Circuit reasoned: "There is a 'compelling humanitarian interest in keeping families united,' so the humanitarian and public interest factors weigh significantly in Raya-Vaca's favor." *Id.* (citation omitted). The Ninth Circuit also found persuasive Department of Homeland Security statistics, which showed that CBP provided 70% of aliens in expedited removal proceedings with the opportunity to voluntarily withdraw their applications for admission. *Id.* at 1209.

Here, although Defendant has a criminal history both as a juvenile and as an adult, humanitarian concerns weigh in favor of finding plausible relief. *See id.* at 1210. Defendant was brought to the U.S. in 1993 when he was four years old. Gonzalez-Lopez Decl. ¶ 1. He grew up in the U.S. attended school through the 10th grade. *Id*. ¶ 2. Defendant is married to a U.S. citizen. ¶ 3. Defendant's parents and siblings live in the U.S. Mot. to Dismiss at 5. "There is a 'compelling humanitarian interest in keeping families united,' so the humanitarian and public interest factors weigh significantly in [Defendant's] favor." *Raya-Vaca*, 771 F.3d at 1208. Besides humanitarian concerns, the seriousness of the immigration violation weighs in Defendant's favor because he had no prior removals, unlike the defendant in *Raya-Vaca*. *See Raya-Vaca*, 771 F.3d at 1208. Defendant's lack of any prior findings of inadmissibility also weighs in his favor.

Two factors cut against Defendant's claim that relief was plausible. First, Defendant intended to violate the law. Defendant sought to avoid detection from immigration officials at the San Ysidro Port of Entry in 2007 by hiding himself in the auxiliary gas tank of a pick-up truck. *See* Encinas Decl. ¶ 7. This factor alone, however, is not compelling because Defendant was a minor at the time. Second, Defendant is now a young man in his late twenties and the record provides no evidence of poor health.

Lastly, Defendant's ability to overcome the ground of inadmissibility is uncertain.

12

Because Defendant received a misdemeanor drug conviction for use of a controlled substance, he may "not easily overcome the grounds for inadmissibility because his . . . wife could not file a[n] I-130 Petition for Alien Relative request until he first obtained an expungement of his felony drug conviction." *See United States v. Haro-Munoz*, 552 F. App'x. 689, 690 (9th Cir. 2014); *see also* Encinas Decl. ¶ 9. But, in *United States v. Ruiz*, a court in the Central District of California found that defendant had demonstrated plausible grounds for relief despite "permanent[] inadmissib[ility]" due to two felony drug trafficking convictions. 2015 WL 13573882, at *4-5 (C.D. Cal. 2005). Thus, this factor may not serve as a significant barrier for Defendant, especially because his drug conviction was a misdemeanor, and not a felony. In addition, Defendant presents statistical evidence comparable to the evidence presented in *Raya-Vaca* to support a finding of plausible relief. This evidence shows that during the relevant period, "between 44% and 70% of individuals subject to expedited removal proceedings were allowed to withdraw their applications." Mot. to Dismiss at 6. Although statistics alone cannot establish the plausibility of relief, they are a relevant consideration. *Raya-Vaca*, 771 F.3d at 1209.

The government counters that Defendant was not entitled to plausible relief based on SCBPO Encinas' analysis of Defendant's case. SCBPO Encinas stated: "[p]er my review of the Defendant's criminal and immigration history in conjunction with his documents, there were no mitigating facts or circumstances in this case that would warrant allowing the Defendant the opportunity to withdraw his application for admission rather than expeditiously removing him from the country." Encinas Decl. ¶ 16. But the government does not provide evidence that SCBPO Encinas weighed the humanitarian interests in his analysis.

Having considered the six factors enumerated in the Inspector's Field Manual for immigration officers, the Court finds that Defendant has satisfied his burden to prove plausible grounds for relief.

//

//

//

**III. CONCLUSION**

The 2010 expedited removal order was fundamentally unfair and therefore cannot be relied upon for a prosecution under 8 U.S.C. § 1326. Accordingly, Defendant's motion to dismiss the information is GRANTED.

**IT IS SO ORDERED**.

Dated: September 1, 2020

EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE